RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0218P (6th Cir.)
File Name: 03a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

S.A. VAKILIAN, Administrator
of the ESTATE OF
MOHAMMAD M. VAKILIAN,
M.D.,

    *Plaintiff-Appellee/*
*Cross-Appellant,*

*v.*

WESLEY SHAW,
    *Defendant-Appellant/*
*Cross-Appellee,*

RICHARD L. KOENIGSKNECHT,
    *Defendant-Appellee.*

Nos. 01-2377/2443

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 00-60459—Marianne O. Battani, District Judge.

Argued: October 29, 2002

Decided and Filed: July 2, 2003

Before: SILER and MOORE, Circuit Judges; McKINLEY,
District Judge.[*]

---

**COUNSEL**

**ARGUED:** Mark E. Donnelly, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Hugh M. Davis, Jr., CONSTITUTIONAL LITIGATION ASSOCIATES, Detroit, Michigan, for Appellee. **ON BRIEF:** Mark S. Meadows, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Hugh M. Davis, Jr., CONSTITUTIONAL LITIGATION ASSOCIATES, Detroit, Michigan, for Appellee.

---

**OPINION**

---

SILER, Circuit Judge. In this interlocutory appeal, Defendant Wesley Shaw, Special Agent for the Michigan Attorney General's Office, appeals the district court's denial of absolute and qualified immunity regarding claims brought by the estate of Dr. Mohammad M. Vakilian pursuant to 42 U.S.C. §§ 1983 and 1985(3) for alleged violations of Vakilian's constitutional rights during the state's investigation and prosecution of him for Medicaid fraud. Vakilian cross-appeals, requesting that we exercise our pendent appellate jurisdiction to reverse the district court's order granting summary judgment in favor of Defendant Richard Koenigsknecht, Assistant Attorney General for the State of Michigan, based on absolute prosecutorial immunity. For the reasons stated below, we **AFFIRM** the denial of absolute immunity to Shaw. We also **AFFIRM** in part and **REVERSE** in part the district court's decision denying him

---

[*] The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

qualified immunity. With respect to the claims against Koenigsknecht, we choose to exercise our discretion to **AFFIRM** the grant of summary judgment on the Fourth Amendment claim, but decline to exercise pendent appellate jurisdiction to review the district court's grant of summary judgment to Koenigsknecht on the § 1985(3) claim.

## BACKGROUND

Following the dismissal of criminal charges, S.A. Vakilian, administrator of the estate of the late Mohammad M. Vakilian, M.D., sued Koenigsknecht and Shaw, seeking relief under 42 U.S.C. §§ 1983 and 1985(3) for alleged violations of Vakilian's civil and constitutional rights during the state's investigation and prosecution of him for Medicaid fraud. The complaint alleged that Koenigsknecht and Shaw conspired to violate Vakilian's Fourth and Fourteenth Amendment rights by prosecuting him without probable cause and that the defendants' actions were motivated by animus toward Vakilian because of his ethnicity or national origin.

In 1994, Shaw was assigned to a federal task force to investigate Vakilian's employer, "Health Stop" medical clinics, for suspected Medicaid fraud. The task force executed search warrants for records and interviewed several patients, employees, and doctors at all four Health Stop locations. The investigation ultimately revealed a system of illegal kickbacks to employee-physicians in the form of monthly bonuses that were based upon the number of medical tests ordered by the physicians. Several physicians admitted that they willingly participated in the scheme.

Although there was no direct evidence showing that Vakilian knew that he was receiving an illegal kickback, circumstantial evidence implicated his participation in the scheme. His employment contract contained the same bonus provision as several individuals who admitted liability, and records established that his monthly bonuses were based upon the number of medical tests he ordered for his patients.

After reviewing this evidence, Koenigsknecht authorized a complaint against Vakilian, along with several other physicians, charging them with multiple violations of the Michigan False Claims Act (MFCA), which makes it illegal[1] to receive a kickback for ordering tests covered by Medicaid. Shaw then took the complaints to the state district court for the purpose of obtaining arrest warrants for all of the physicians. When testifying, Shaw told the judge that Vakilian "received additional money above what he's supposed to get by [ordering] excessive amounts of tests," and indicated that "[t]here was agreement between [Vakilian] and the owner, Dr. Baig, to [] perform these services and that he would receive money for his services." Vakilian was subsequently charged and bound over for trial.

On November 17, 1997, the Wayne County Circuit Court reversed the finding of the district court and quashed the information. The Michigan Court of Appeals upheld the dismissal of the charges, citing a lack of evidence that Vakilian knowingly received a kickback, a necessary element of the charge. At the time Shaw testified before the district court, the MFCA did not contain an element of intent or knowledge. However, after Vakilian was charged, the Michigan Court of Appeals ruled that general intent was a requirement under the statute.

The estate subsequently filed this civil action pursuant to 42 U.S.C. § 1983, claiming that the defendants individually, and as part of a conspiracy, violated Vakilian's Fourth Amendment rights by arresting and prosecuting him without probable cause. The theory of Vakilian's case is that Shaw,

---

[1] The MFCA provides in relevant part: "A person who solicits, offers, or receives a kickback or bribe in connection with the furnishing of goods or services for which payment is or may be made in whole or in part pursuant to a program established under Act No. 280 of the Public Acts of 1939, [ ] as amended, who makes or receives the payment, or who receives a rebate of a fee or charge for referring an individual to another person for the furnishing of the goods and services is guilty of a felony. . . ." MCL 400.604.

on the advice of Koenigsknecht, knowingly gave false or misleading testimony to the judge in order to demonstrate probable cause for an arrest warrant. The complaint also alleges that the defendants' actions were motivated by national origin discrimination, and the defendants are therefore liable under 42 U.S.C. § 1985(3) for conspiring to deprive Vakilian of equal protection of the law.[2] Specifically, the estate argues that Vakilian, an American citizen who was born in Iran, was subjected to discriminatory treatment when the task force chose not to interview him, as they did other potential Anglo-American suspects, despite knowing that not all doctors who received the bonus were aware that it was derived from illegal means. The estate also cites evidence that ten foreign-born, Asian physicians and one Jewish-American physician were prosecuted, whereas three white American, non-Jewish physicians, who admitted to participation in the illegal scheme, were not.

Koenigsknecht and Shaw filed a motion to dismiss and for summary judgment with supporting affidavits. Vakilian filed a response supported by documentation obtained from the earlier criminal case. The district court granted summary judgment to Koenigsknecht on all federal claims based upon absolute immunity. It declined to grant immunity to Shaw, however, on grounds that a factual dispute remained as to whether he acted with intent or discriminatory animus.

---

[2] 42 U.S.C. § 1985(3) states in relevant part:

If two or more persons in any State or Territory conspire. . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

## JURISDICTION

An appeal from the denial of qualified immunity may be reviewed on interlocutory appeal under *Mitchell v. Forsyth*, 472 U.S. 511 (1985), to the extent that it raises questions of law. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). Mixed questions of law and fact are treated as legal questions for purposes of our review. *See Willams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (*en banc*). Denials of qualified immunity, however, cannot be reviewed to the extent that the defendant seeks to challenge the district court's determination that the evidence was sufficient to permit a particular finding of fact. *Johnson v. Jones*, 515 U.S. 304. 214 (1995). Therefore, we have jurisdiction to consider whether the plaintiff's version of facts demonstrates a violation of clearly established rights under the Fourth and Fourteenth Amendments.

## STANDARD OF REVIEW

We review the district court's decision to deny a motion for summary judgment based on qualified immunity *de novo*. *Stemler v. City of Florence*, 126 F.3d 856, 866 (6th Cir. 1997). Because the district court considered matters outside the pleadings in rendering its decision on the defendant's motion to dismiss and for summary judgment, the decision will be treated as one for summary judgment.[3] *See Higgason v. Stephens*, 288 F.3d 868, 874 (6th Cir. 2002) (citing *Salephpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998)). Summary judgment based on qualified immunity is proper if the law did not put the officer on notice that his conduct would be clearly unlawful. *Id.* at 876. However, if genuine issues of material fact exist as to whether the officer

---

[3] Although Vakilian urges that he be allowed additional discovery, noting that his claim was dismissed before discovery had taken place in the civil matter, he does not argue that he was not given the opportunity to present evidence and respond to the defendants' motion to dismiss and for summary judgment. Therefore, we will treat the district court's ruling as one for summary judgment based on qualified immunity.

committed acts that would violate a clearly established right, then summary judgment is improper. *Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988).

## DISCUSSION

### A.  Absolute Immunity for Shaw

Shaw contends that the district court erred in denying his claim to absolute immunity.  He argues that, even assuming he knowingly made false statements to the judge, he is nevertheless entitled to absolute immunity for functioning as an official who performs a critical role in the judicial process. Alternatively, Shaw asserts that he is entitled to absolute immunity for testifying as a witness.  We disagree.

This court has previously held that where an investigator testifies to the factual basis of a criminal complaint before a judicial officer, he is entitled to qualified immunity only.  In *Ireland v. Tunis*, we declined to extend absolute immunity to an investigator who swore out an arrest warrant and explicitly rejected the argument that the officer's actions were analogous to those of a prosecutor and thus warranted complete immunity from suit.  113 F.3d 1435, 1448 (6th Cir. 1997) (rejecting the Tenth Circuit's reasoning in *Roberts v. Kling*, 104 F.3d 316 (10th Cir. 1997), which held that an investigator was absolutely immune from suit for swearing out a criminal complaint before a judge on grounds that his actions were analogous to those of a prosecutor).  We reasoned that, for immunity purposes, "the action of an 'officer applying for a warrant. . .while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment.'"  *Id.* at 1447 (quoting *Malley v. Briggs*, 475 U.S. 335, 342-43 (1986)).  Thus, Shaw is not entitled to absolute immunity for his role in the issuance of the arrest warrant.

Nor is Shaw entitled to absolute immunity as a testifying witness.  In *Briscoe v. Lahue*, 460 U.S. 325 (1982), the Supreme Court extended absolute immunity, normally

accorded testifying witnesses, to a police officer who gave perjured testimony at a criminal trial.  The underlying rationale of the decision was that the officer functioned as an ordinary witness subject to the adversary process inherent in a trial.  In this case, however, Shaw testified at an *ex parte* proceeding  where his actions were that of a "complaining witness" rather than a "testifying witness."  Because a complaining witness is not protected by absolute immunity, neither is Shaw.  *See Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997); *Ireland,* 113 F.3d. at 1148.  Accordingly, we hold that the district court did not err in denying Shaw's claim to absolute immunity from damages.

### B.  Qualified immunity for Shaw

We now turn to the question of whether Shaw is entitled to qualified immunity with respect to Vakilian's Fourth and Fourteenth Amendment claims.  Qualified immunity shields government officials acting within the scope of their official duties from civil liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1983).  The purpose of the qualified immunity defense is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999) (quoting *Harlow*, 457 U.S. at 806). Thus, whether an official is entitled to qualified immunity is a threshold question to be resolved at the earliest possible point in the proceedings. *See Harlow*, 457 U.S. at 818.

In determining an officer's entitlement to qualified immunity we follow a two-step inquiry. *Saucier v. Katz,* 533 U.S. 194, 201-02 (2001).  First, taken in the light most favorable to the plaintiff, we decide whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201.  If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made

out on a favorable view of the plaintiff's submissions, we next ask whether the right was clearly established. *Id.*

### 1. Fourth Amendment Claim

Shaw argues that the district court erred in denying him qualified immunity on the claim that he procured the arrest warrant through false testimony. He contends that there was probable cause to arrest Vakilian despite the allegedly false statements, and, therefore, the estate cannot demonstrate that Vakilian's Fourth Amendment rights were violated.

The Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause. *Greene v. Reeves,* 80 F.3d 1101, 1105 (6th Cir. 1996). In a civil rights case, investigators are entitled to rely on a judicially-secured arrest warrant as satisfactory evidence of probable cause. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989) (citations omitted). However, "an officer [or investigator] cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Id; see also Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1996); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest. *Ahlers*, 188 F.3d at 373. To overcome an officer's entitlement to qualified immunity, however, a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause. *See Hill*, 884 F.2d at 275 (applying test set forth in *Franks v. Delaware*, 438 U.S. 154 (1973), to evaluate a § 1983 claim); *see also Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)*; Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995); *Packer v. City of Toledo*, No. 99-4157, 2001 WL 45122, at *3 (6th Cir. Jan. 12, 2001) (unpublished opinion) (noting that the materiality of the

false information used to procure a search warrant was a key issue in deciding whether to grant qualified immunity). In other words, Vakilian must show that the judge would not have issued the warrant without the allegedly false material.

Relying on our decision in *Hill*, 884 F.2d 271, Vakilian first argues that the issue of probable cause is for the jury where there is an allegation of a false swearing to obtain a warrant. This is incorrect. Although in *Hill* we vacated a directed verdict in favor of the defendant officer and held that the question of "whether the judicial officer issuing the warrant would have done so even without the knowingly or recklessly false statement is one for the jury," qualified immunity was not at issue. *Id.* at 276. Where qualified immunity is asserted, the issue of probable cause is one for the court since "the entitlement is immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991) (quoting *Mitchell*, 472 U.S. at 511); *see also Burda Bros., Inc. v. Walsh*, No. 00-1418, 2001 WL 1254808 at *7 n.8 (6th Cir. Oct. 21, 2001) (unpublished opinion) ("It is clear that in *Hill*, as in *Yancey* (which is cited in *Hill*), the issue is one for the jury only when the evidence creates a genuine issue of material fact for trial."). Only where the evidence creates a genuine issue of material fact should the matter proceed to trial. Here, viewing the facts in the light most favorable to the plaintiff, we find there is no dispute of material fact as to the events leading up to Vakilian's arrest.

For qualified immunity purposes, we assume that Vakilian has made the required showing that Shaw recklessly disregarded the truth when he testified before the judge. Shaw told the judge that Vakilian ordered excessive tests pursuant to an agreement with the owner of the clinic when, in fact, there was no evidence to suggest that Vakilian ordered any unnecessary test or knew how his bonus was computed. Thus, Shaw's testimony is false inasmuch as it implies that Vakilian ordered tests that were not medically necessary and knew that his bonus money was based on the number of tests he ordered. The conclusion that Shaw misrepresented the evidence to the judge does not end our inquiry, however,

because we must also determine whether the false statements were material to the finding of probable cause.

At the time Shaw testified before the judge, Michigan law did not require the government to prove that an individual charged with Medicaid fraud intended to receive or had knowledge of the kickback. The MFCA contained no element of scienter and had been interpreted to prohibit referral fees, or kickbacks, even for medically necessary tests. It was not until ten months after Vakilian's arrest that the Michigan Court of Appeals ruled that a showing of general intent was required under the statute. *See People v. Motor City Hosp. and Surgical Supply*, 557 N.W.2d 95, 99-100 (Mich. App. 1997). Thus, there was no requirement that Shaw offer proof of knowledge or unnecessary testing in order to establish probable cause.

The remaining question is whether the accurate portions of Shaw's testimony suffice to establish probable cause. In addition to the false statements, Shaw testified that Vakilian "received additional money above what he is supposed to get" and that "records were kept each month on the amount of tests that they [the doctors] were performing and a separate check was written to these doctors for these services." Indeed, the evidence established that Vakilian received a bonus based on the number of tests he ordered and the task force discovered a wide-ranging scheme to cover up the illegal kickbacks. This testimony, while insufficient to bring charges under the current interpretation of the statute, was sufficient to establish probable cause at the time charges were filed against Vakilian.

In summary, the district court erred in holding that there were genuine issues of material fact on the § 1983. Because Shaw's remaining testimony was sufficient to establish probable cause, the judge would have issued the warrant whether or not there had been false testimony. Therefore, Shaw is entitled to qualified immunity on the Fourth Amendment claims of unlawful arrest and malicious prosecution.

### 2.   §1985(3) Claim

Vakilian also maintains that Shaw is liable under §1985(3) for conspiring to deprive him of equal protection of the law. To state a claim under §1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of C & J v. Scott*, 463 U.S. 825, 828-29 (1983). The acts which are alleged to have deprived the plaintiff of equal protection must be the result of class-based discrimination. *See Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992).

On appeal, Shaw argues that Vakilian has failed to put forth sufficient evidence to support a factual finding that a conspiracy existed and that he was motivated by discriminatory animus. Because this is an interlocutory appeal based on qualified immunity, we cannot consider whether Vakilian's evidence is sufficient to present a genuine issue for trial as to the underlying factual elements of his claim. Our jurisdiction is limited to purely legal questions, and, therefore, we lack jurisdiction to review a district court's finding that Vakilian has presented sufficient evidence to proceed to discovery.[4] *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 536-37 (6th Cir. 2002) (citing *Johnson*, 515 U.S. at 317).

For purposes of qualified immunity analysis, there is little doubt that three of the four elements are satisfied. Vakilian alleges that Shaw and Koenigsknecht, as members of the task force, acted in concert to violate his constitutional rights according to an agreed-upon plan. The complaint also sets

---

[4]While we decline to address the sufficiency of Vakilian's evidence, we note that Shaw may make this challenge before the district court on remand.

forth several acts taken in furtherance of the conspiracy, including Shaw's and Koenigsknecht's failure to interview Vakilian during their investigation and their decision to execute a criminal complaint and warrant against Vakilian. These acts, according to Vakilian, deprived him of his rights, privileges, and immunities under the Constitution because the decision to charge him, a foreign-born and ethnic minority doctor, while failing to charge American-born Anglo doctors, deprived him of his right to equal protection of the laws.

The critical issue is whether Vakilian can establish that Shaw's action was motived by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Shaw contends that Vakilian has failed to make out a violation of clearly established law because the defendants in the criminal action do not share a common characteristic that creates a single "class." The defendants in the criminal matter were not of the same ethnicity nor were all of them foreign-trained physicians.

Although "[a] class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender," *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc*., 32 F.3d 989, 994 (6th Cir. 1994), the law does not require a plaintiff to show that he or she is a member of the same protected class as others who may be in a position independently to allege a § 1985(3) violation. Thus, Vakilian need not allege that he and the other criminal defendants share a common heritage. It is sufficient that Vakilian establishes facts tending to show that Shaw possessed discriminatory intent and that he prosecuted Vakilian but not a similarly situated white physician. *See, e.g., Farm Labor Org. Comm*., 308 F.3d at 534 ("A claimant can demonstrate discriminatory effect by naming a similarly situated individual who was not investigated or through the use of statistical or other evidence which 'address[es] the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated.") (citation omitted).

Notwithstanding this conclusion, Shaw nevertheless asserts that summary judgment is appropriate in light of his affidavit in support of his motion to dismiss and for summary judgment. Both Shaw and Koenigsknecht submitted affidavits stating that Vakilian's ethnicity was not a consideration in the decision to investigate or bring charges against him. Shaw's affidavit also explains that he testified truthfully during the preliminary exam that he was unaware of the ethnic background of the criminal defendants. Vakilian did not submit additional evidence controverting Shaw's statements that he lacked discriminatory animus.

While an uncontroverted affidavit frequently establishes the absence of a genuine issue for trial, the mere fact that "affidavits filed in support of a motion for summary judgment are not controverted does not necessarily require its being granted. . . ." *Fitzke v. Shappell*, 468 F.2d 1072, 1077 (6th Cir. 1972). "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Fed. R. Civ. P. 56(e), Advisory Committee Notes (1963 Amendment). Therefore, to satisfy his "burden of showing the absence of any genuine issue as to all of the material facts," Shaw "must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." *Fitzke*, 468 F.2d at 1077 n.8.

Section 1985 defendants cannot establish the absence of a genuine issue of material fact simply by disavowing any knowledge of the discriminatory characteristic at issue. In *Reese v. City of Southfield*, No. 97-1670, 1998 WL 552841 at *1 (6th Cir. Aug. 13, 1998), we employed the *McDonnell Douglas* burden-shifting framework in the context of a § 1985 claim alleging discrimination. Noting that the Supreme Court applies this burden shifting analysis to employment discrimination lawsuits brought under 42 U.S.C. § 1981, this court reasoned that the scheme should also apply to § 1985 suits for discrimination outside the employment context:

*McDonnell Douglas* and its progeny reflect the fact that direct evidence is often unavailable in discrimination cases. . . . [A] discrimination plaintiff cannot necessarily offer direct testimony that his rejection, demotion, termination, or denial was due to unlawful discrimination. *McDonnell Douglas* thus serves a discovery-like function: as long as a plaintiff can establish a prima facie case. . ., the defendant is required to prove an explanation of its actions. . .

*Id.*; *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (explaining that the *McDonnell Douglas* formula articulates the evidentiary framework for discrimination claims brought under §1981). As a consequence, Shaw must do more than deny any discriminatory animus on his part.[5]

Having determined that the facts alleged in Vakilian's complaint would, if proven, establish an equal protection violation, we must now ask whether the right was clearly established at the time of Shaw's action. In deciding whether a right was clearly established, a court should consider "the specific context of the case," not whether the right was clearly established "as a broad general proposition." *Saucier*, 533 U.S. at 201. "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Id. (citing Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

---

[5] The record does reflect that Shaw advanced a non-discriminatory reason for prosecuting Vakilian but not the Anglo physicians. Shaw's testimony suggests that he believed that some of the American-born physicians should have been charged inasmuch as they were known to have participated in the fraudulent scheme but that these individuals were not ultimately charged because the statute of limitations had run. In response, Vakilian argues that this reason is pretext, citing the fact that one of the Anglo physicians admitted to receiving a bonus check during the statute of limitations period. Again, because this case is before us on interlocutory appeal, we must view the facts in the light most favorable to the plaintiff. Therefore, we must assume, for qualified immunity purposes only, that Vakilian has established a constitutional violation.

At the time of Vakilian's arrest, this circuit recognized that "the enforcement of an otherwise valid law can be a *means* of violating constitutional rights by invidious discrimination." *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir. 1996); *see also Stemler*, 126 F.3d at 873; *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991). Moreover, an officer's reasonable belief that probable cause exists for arrest does not affect the availability of a separate selective enforcement claim under the Equal Protection Clause. *Stemler*, 126 F.3d 873 (noting that in *Whren v. United States*, 517 U.S. 806 (1996), the Supreme Court confirmed the availability of an equal protection claim despite the existence of probable cause). Thus, it seems clear to us that, at the time Shaw swore out the arrest warrants, selective enforcement because of race, ethnicity, nationality, or religion was grounds for relief.

Although investigators have considerable discretion as to how they conduct investigations and enforce the law, a reasonable officer in Shaw's position would have recognized that selective enforcement on the basis of a suspect's race or ethnicity is unconstitutional. According to Vakilian's complaint, Shaw had reason to suspect that all seventeen physicians who worked at Health Stop clinics might have been involved in the illegal scheme to some degree. If, as Vakilian alleged, Shaw had comparable evidence against four physicians--Vakilian, an Iranian-born physician, and three Anglo-American physicians--and decided to charge him and not to charge the Anglo-Americans because of their respective races or ethnicity, surely the circumstances were such that a reasonable officer in Shaw's position would recognize that this selective enforcement of the law was unconstitutional. Therefore, Shaw is not entitled to qualified immunity with respect to Vakilian's § 1985(3) claim.

## C. Pendent Jurisdiction

In his cross-appeal, Vakilian requests that we exercise our pendent appellate jurisdiction to reverse the district court's order granting summary judgment in favor of Koenigsknecht.

In order to exercise pendent jurisdiction over an issue that is not independently appealable, the issue must be "inextricably intertwined" with the issue of qualified immunity. *Brennan v. Township of Northville*, 78 F.3d 1152, 1157 (6th Cir. 1996) (interpreting dictum in *Swint v. Chambers County Comm'n*, 514 U.S. 35 (1995), "as allowing pendent appellate jurisdiction where the appealable and non-appealable issues are 'inextricably intertwined.'"). This circuit has interpreted "inextricably intertwined" to mean that the resolution of the appealable issue "necessarily and unavoidably" decides the non-appealable issue. *Id.*

The resolution of the Fourth Amendment claim against Shaw permits us to exercise our discretion to review the district court's determination of Koenigsknecht's liability on this issue. Vakilian alleged that both defendants conspired to violate his Fourth Amendment rights. Our finding that probable cause existed for Vakilian's arrest, however, precludes us from finding that Koenigsknecht's alleged actions as a prosecutor amounted to a constitutional violation. *See id.* (exercising pendent jurisdiction to reverse summary judgment in favor of the plaintiff on his claim where we found no constitutional violation in our qualified immunity analysis); *see also Mattox v. City of Forest Park*, 183 F.3d 515, 523-24 (6th Cir. 1999) (finding it appropriate to resolve a pendent claim against the city government where there had been no constitutional violation by city officials). In other words, the determination that no constitutional violation occurred necessarily and unavoidably resolves Vakilian's Fourth Amendment claim against Koenigsknecht. We therefore affirm that grant of summary judgment to Koenigsknecht on this claim.

However, having concluded that Vakilian's allegations, if proven true, constitute a violation of his equal protection rights, we cannot exercise pendent jurisdiction over the § 1985(3) claim against Koenigsknecht. The district court granted summary judgment in favor of Koenigsknecht, finding that he was entitled to absolute immunity because his acts were intimately bound up with the judicial phase of the

criminal process. Our analysis addresses only whether the facts, when viewed in the light most favorable to Vakilian, establish a violation of a clearly established right. Thus, because an equal protection violation may very well exist and our resolution of the appealable issue has no bearing on the question of absolute immunity, Shaw's appeal in this case is not "inextricably intertwined" with the equal protection claim against Koenigsknecht. Accordingly, we decline to review the district court's decision to grant summary judgment to Koenigsknecht on this claim.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's denial of absolute immunity to Shaw in his individual capacity. We also **REVERSE** the district court's denial of qualified immunity on the Fourth Amendment claim and **AFFIRM** the district court's denial of qualified immunity with respect to the § 1985 claim and **REMAND** this case for further proceedings. With respect to the claims against Koenigsknecht, we choose to exercise our discretion to **AFFIRM** the grant of summary judgment on the Fourth Amendment claim, but decline to exercise pendent appellate jurisdiction to review the district court's grant of summary judgment to Koenigsknecht on the § 1985 claim.