**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0295n.06

No. 10-1031

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CHRISTOPHER RYAN RICHARDSON, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| MOHAMMED NASSER, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| **Defendant-Appellant,** | ) | |
| | ) | |
| and | ) | **O P I N I O N** |
| | ) | |
| MICHAEL ANTHONY, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**FILED**

*May 05, 2011*

LEONARD GREEN, Clerk

**Before: MOORE and WHITE, Circuit Judges, and VARLAN, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.** Christopher Ryan Richardson ("Richardson") brought suit under 42 U.S.C. § 1983 and the common law of the State of Michigan, asserting, inter alia, claims of false arrest. Richardson alleges that Mohammed Nasser ("Nasser"), a city detective, lacked probable cause to arrest Richardson for the death of his nine-day-old daughter, Nevaeh, on charges of felony murder, first-degree child abuse, and first-degree criminal sexual abuse. The United States District Court for the Eastern District of Michigan granted in part and denied in part

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Nasser's motion for summary judgment. Nasser appeals the denial of summary judgment with respect to: (1) the federal claim of false arrest, on the grounds that he is entitled to qualified immunity, and (2) the state claim of false arrest, on the grounds that he is entitled to governmental immunity.

Proof of the facts and inferences as alleged by Richardson would establish the violation of a clearly established right to be free from arrest without probable cause. Therefore, we **AFFIRM** the district court's denial of summary judgment on the federal claim of false arrest on the grounds of qualified immunity. Under Michigan law, good faith is a necessary element of the governmental-immunity defense. An issue of material fact remains as to whether Nasser intentionally made misrepresentations to the state judge, which would defeat good faith. Accordingly, we **AFFIRM** the district court's denial of summary judgment on the state-law claim on the grounds of governmental immunity.

## I. BACKGROUND

Richardson's claims of false arrest arise out of the death of his nine-day-old daughter, Nevaeh, and the ensuing investigation by police for the City of Lincoln Park, Michigan. Nevaeh was born on November 15, 2007 and resided in Lincoln Park with her parents, Richardson and Cynthia Goscicki ("Goscicki"), Richardson's mother, Adie Green, his brother, Jacob, and Adie Green's husband, Gerald Green. On the night of November 22, 2007—Thanksgiving Day—Nevaeh was taken to Wyandotte Henry Ford Hospital after Richardson and Goscicki observed her bleeding from the nose and mouth.

Upon admission, medical personnel observed an injury to Nevaeh's rectum, and contacted the Lincoln Park Police Department to report a suspicion of criminal sexual conduct involving Nevaeh. Nevaeh was then transferred to Children's Hospital in Detroit for specialized care, where she died on November 24, 2007. An autopsy conducted on November 26, 2007 revealed that Nevaeh's death was a homicide caused by an "extensive penetrating trauma to the anus that caused bleeding and tearing of the anal skin" leading to severe infection (sepsis) and fatal blood loss. R. 18-15 at 2 (Post Mortem Report at 1). The medical examiner also documented injuries to her head, wrists, and ankles.

On November 23, in response to the report of suspected abuse, Nasser and Steward Howell ("Howell") were dispatched to Children's Hospital. When they arrived, they were advised by a doctor that the infant was in critical condition and that there was evidence of sexual assault. While at the hospital, Nasser and Howell conducted initial interviews with Richardson and Goscicki.[1] Later that night, at the police department, Nasser and Howell also interviewed the Greens. On November 23, following the initial interviews, Richardson was arrested for domestic assault arising out of Richardson's attack on Goscicki while they were taking Nevaeh to the hospital. He pleaded guilty on January 25, 2008 and does not assert any claims arising solely from his arrest on that charge.

---

[1]The following interviews were recorded, and CDs of the recordings were submitted to the court: November 23, 2007 interviews of Adie Green and Gerald Green; November 24, 2007 interview of Goscicki; November 24, 2007 interview of Richardson; and November 26, 2007 polygraph of Richardson.

On November 24, after Nevaeh's death, Howell and Nasser conducted additional interviews of Goscicki and Richardson and interviewed family members of Goscicki who had been with her and the infant on Thanksgiving Day. They learned that Richardson had a history of drug abuse and domestic violence, and had made threats toward Goscicki and Nevaeh. Goscicki also informed Howell that, on the evening of November 21, 2007, she and Richardson had an argument and Richardson locked her out of the house for between twenty and thirty minutes. She stated that, while she was locked out, Richardson was alone with the baby and she could hear Nevaeh crying. She stated that, after the incident, Nevaeh was unusually fussy and cried whenever she was put down.

Following his second interview with Richardson, Nasser arranged for Michael Anthony ("Anthony"), who is licensed in Michigan as a polygraph examiner, to conduct a polygraph of Richardson. Anthony reported that Richardson had not answered truthfully three questions about causing injury to Nevaeh. Anthony explained to Richardson that he failed the exam, and continued to discuss with Richardson what may have happened to Nevaeh. Throughout the interview, Richardson denied ever intentionally harming Nevaeh. Richardson eventually admitted, in response to questioning, that, because of his long nails, it was possible he had accidentally caused injury to Nevaeh's anus while changing her diaper and applying diaper-rash cream. He later recanted, however, stating that Goscicki was the only person to have applied diaper-rash cream or to have taken Nevaeh's temperature with the rectal thermometer.

Nasser interviewed Richardson for twenty to thirty minutes after Anthony. Richardson admitted that his finger may have been inserted into Nevaeh's anus and his nail may have cut her

while wiping her, but questioned how such an accidental scratch could have resulted in Nevaeh's extensive injuries. He also pointed out that Goscicki had long nails, too, and could have caused Nevaeh's injury in the same way. Nasser then traced Richardson's hand and Richardson indicated how far he may have inserted his finger into Navaeh's anus; Richardson claims he indicated only that his fingernail could have been inserted.

After the polygraph examination, Nasser provided an investigative report to the prosecutor's office, along with Anthony's polygraph report, videorecordings of the polygraph and other interviews, and signed witness statements. A prosecutor independently reviewed the evidence and prepared a criminal complaint and felony warrant charging Richardson with felony murder, under Mich. Comp. Laws § 750.316(1)(b); first-degree child abuse under Mich. Comp. Laws § 750.136b(2); and first-degree criminal sexual conduct under Mich. Comp. Laws § 750.520b(1)(a). The complaint and warrant did not contain specific factual allegations against Richardson.

On December 3, 2007 Nasser appeared before a state-court judge with the complaint and warrant prepared by the prosecutor. The judge conducted a probable-cause hearing and heard testimony from only Nasser. Nasser testified that:

> upon interviewing the Defendant, um, he made admissions that he did in fact stick his finger in [Navaeh's] rectum. Um, at that time, he—I traced his hand, and he pointed to, uh, his index fing—or pointer finger, and showed me how far he inserted the finger into the rectum. That, uh, statement was recorded via, uh, video.

5

R. 30-5 at 6 (Dec. 3, 2007 Hr'g Tr. at 5). The state judge was not presented with copies of the recordings and did not independently review the evidence at that time. But, based on Nasser's testimony, the judge concluded that probable cause existed, and signed the complaint and warrant.

In January 2008, following Richardson's arrest, the state judge conducted a preliminary examination extending over two hearing dates. At these hearings, the judge took testimony from various witnesses, including those interviewed by Nasser and Howell during the initial investigation, to evaluate the prosecutor's motion to bind Richardson over on the charged offenses. The judge also reviewed, for the first time, the recorded interviews, including the polygraph examination of Richardson.

At the conclusion of the preliminary exam, the judge stated that he was satisfied that the cause of Nevaeh's death was penetrating trauma to the anus and that the manner of death was homicide. He concluded, however, that probable cause did not exist to believe that Richardson had committed the charged crimes. After summarizing the evidence, the judge stated:

> That is a completely different type of fact circumstance than what was presented to the Court, or as the Court understood it at the time that this case initially came before it . . . . If when the Court signed the Complaint and Warrant in this matter, if the Court was aware that this purported statement of Mr. Richardson was simply an acknowledgment of the possibility of some incidental scratching or slight penetration with the nail while wiping the baby's butt with a diaper wipe, and that was the extent of his acknowledged statement, the Court would have never even signed the Complaint and Warrant charging him with this offense. Instead, the Court understood from the testimony of the officer that Mr. Richardson acknowledged digital penetration of the anal cavity of the deceased.

R. 30-4 at 81–82 (Jan. 25, 2008 Hr'g Tr. at 80–81). The charges related to Nevaeh's death were then dismissed.

6

On July 10, 2008, following dismissal of the charges, Richardson filed suit under 42 U.S.C. § 1983 and the common law of the State of Michigan against Nasser and Anthony in the United States District Court for the Eastern District of Michigan. Richardson claimed that Nasser and Anthony violated his constitutional rights during their investigation of the death of Nevaeh. After discovery, Nasser and Anthony filed separate motions for summary judgment which sought, inter alia, dismissal of the federal claims based on qualified immunity and dismissal of the state claims based on governmental immunity. On December 9, 2009, the district court entered a Memorandum and Order granting in part and denying in part Nasser's motion for summary judgment, and granting Anthony's motion for summary judgment.

The surviving claims against Nasser are the § 1983 and state-law claims for false arrest. Nasser timely appealed denial of summary judgment with respect to these claims.

## II. SECTION 1983 CLAIM

### A. Jurisdiction

On appeal from the denial of summary judgment, Nasser challenges the district court's determination that he is not entitled to qualified immunity on the § 1983 claim of false arrest. "A district court's denial of qualified immunity is an appealable final decision under 28 U.S.C. § 1291, but only 'to the extent that it turns on an issue of law.'" *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). We lack jurisdiction to review "a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515

U.S. 304, 319-20 (1995). But, "regardless of the district court's reasons for denying qualified immunity, we may exercise jurisdiction over [Nasser's] appeal to the extent it raises questions of law." *Williams v. Mehra*, 186 F.3d 685, 689–90 (6th Cir. 1999) (en banc) (internal quotation marks and emphasis omitted).

In order for appellate jurisdiction to exist, "if the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th. Cir. 2009) (internal quotation marks omitted). For purposes of the appeal, Nasser "limit[s] [his] argument to questions of law premised on facts taken in the light most favorable" to Richardson. *Meals v. City of Memphis*, 493 F.3d 720, 726–27 (6th Cir. 2007). Therefore, we have jurisdiction to consider whether the facts alleged by Richardson "show[] a violation of clearly established law." *Johnson*, 515 U.S. at 311 (internal quotation marks omitted).

## B. Standard of Review

We review de novo the denial of summary judgment. *Moldowan*, 578 F.3d at 373. Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "Qualified immunity is a question of law, but 'where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.'" *McKenna v. Edgell*, 617 F.3d 432, 437 (6th Cir. 2010) (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004)), *cert. denied*, --- S. Ct. ---, 2011 WL 247034 (U.S. Mar. 28, 2011). "'Thus, to the extent that there

is disagreement about the facts' . . . 'we must review the evidence in the light most favorable to [Richardson], taking all inferences in [his] favor.'" *Id.*

Richardson bears the burden of demonstrating that Nasser is not entitled to qualified immunity. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). "Qualified immunity shields government officials acting within the scope of their official duties from civil liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982)). Thus, on summary judgment, Nasser benefits from qualified immunity "unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find" the violation of a clearly established right. *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010) (internal quotation marks omitted).

## C. Qualified Immunity

We analyze claims of qualified immunity by asking three questions: "(1) whether a constitutional right was violated; (2) whether that right was clearly established and one of which a reasonable person would have known; and (3) whether the official's action was objectively unreasonable under the circumstances." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). "In many factual contexts, however, . . . the fact that a right is 'clearly established' sufficiently implies that its violation is objectively unreasonable." *Estate of Carter*, 408 F.3d at 311 n.2. For Richardson to defeat qualified immunity, he must show that Nasser violated a right that is "'clearly established' in a . . . particularized . . . sense: The contours of the right must be sufficiently clear that

a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Richardson has alleged a violation of "a known constitutional right" to be free from arrest without probable cause. *Gregory v. City of Louisville*, 444 F.3d 725, 759 (6th Cir. 2006). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest . . . made pursuant to § 1983." *Id.* An officer cannot rely, however, on a facially valid warrant as satisfactory evidence of probable cause "when evidence exists that a defendant intentionally mislead or intentionally omitted information at a probable cause hearing for an arrest . . . warrant provided that the misleading or omitted information is critical to the finding of probable cause." *Id.* at 677 n.4; *see also Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Therefore, to overcome qualified immunity in this context, Richardson must establish "(1) a substantial showing that [Nasser] stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian*, 335 F.3d at 517. Put another way, Richardson "must show that the judge would not have issued the warrant without" the misrepresentations. *Id.*

Richardson has presented evidence that Nasser intentionally misrepresented Richardson's statements to the state judge, and that those misrepresentations were material. Because we accept

the facts as asserted by Richardson when reviewing qualified immunity on summary judgment, we assume "that [Richardson] has made the required showing that [Nasser] recklessly disregarded the truth when he testified before the judge." *Id.* at 518. According to Richardson, he admitted to—at most—possible, accidental, and minimal scraping. The district judge also identified a dispute over how far Richardson indicated during the post-polygraph-exam interview that he may have inserted his finger. Thus, Nasser's testimony is alleged to be misleading to the extent Nasser suggested that Richardson admitted to abusing Nevaeh intentionally.

We then assess whether Richardson could show that "the judge would not have issued the warrant" if Nasser had accurately represented Richardson's statements. *Id.* at 517. Richardson contends that the state judge relied on Nasser's misrepresentations to conclude that there was probable cause to believe that Richardson was guilty of the charged offenses, and so the misrepresentations were material. *See Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1244 (6th Cir. 1989) ("Whether this is material or not depends on the extent to which [the judge] relied on these statements in issuing the search warrant."). Moreover, during the preliminary examination the next month, and after he had viewed tapes of Richardson's interviews, the state judge stated that he would not have signed the complaint and warrant if he had been aware of the nature and context of Richardson's statements.

In light of the facts and inferences favoring Richardson, "the judge would not have issued the warrant" if Nasser had accurately represented Richardson's statements. Indeed, the evidence presented to the state judge at the initial probable-cause hearing consisted primarily of the testimony

now at issue. Nasser was the only witness to testify at the hearing, and the complaint and warrant

consisted of only conclusory statements that Richardson caused the injury to Nevaeh's rectum. Thus,

the allegedly misleading information was "material to the finding of probable cause." *Vakilian*, 335

F.3d at 517; *see Gregory*, 444 F.3d at 759 ("[A] reasonable jury could conclude that without the

[omitted] testimony or with the additional exculpatory information . . . the preliminary hearing judge

would have failed to find probable cause."); *Yancey*, 876 F.2d at 1244 ("[A] reasonable person could

believe that [the judge] would not have issued the warrant but for the disputed statement.").

Proof of the facts and inferences as alleged by Richardson—namely, that Nasser intentionally

misrepresented the evidence, and that the judge would not otherwise have issued the warrant—would

establish a violation of a clearly established right. Nasser "cannot, in good faith, rely on a judicial

determination of probable cause when that determination was premised on [his] own material

misrepresentations to the court. . . . *Such reliance is unreasonable*, and detention of [Richardson]

pursuant to such deceptive practices violates the Fourth Amendment." *Gregory*, 444 F.3d at 758

(emphasis added) (internal citation omitted); *see also Vakilian*, 335 F.3d at 517. ("An investigator

may be held liable under § 1983 for making material false statements either knowingly or in reckless

disregard for the truth to establish probable cause for an arrest.").[2] Therefore, taking the facts and

_____

[2]Nasser also notes on appeal that he submitted the evidence to a prosecutor, along with his investigative report, and the prosecutor determined what charges to bring against Richardson. Nasser argues that, because the prosecutor independently reviewed the evidence and believed it sufficient to amount to probable cause, then Nasser is immunized from the consequences of any subsequent misrepresentations. Nasser does not cite any case law supporting this construction of immunity, however. To be sure, "[t]his Court has held that a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as

inferences in Richardson's favor, we affirm the denial of summary judgment on the federal claim

of false arrest.

### III. STATE-LAW CLAIM

Nasser also appeals the district court's determination that he is not entitled to governmental

immunity on the state claim of false arrest. With respect to Richardson's pendent state-law claim,

we "look to state immunity law to determine whether a denial of immunity based on state law is

appealable." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407 (6th Cir. 2007). Pursuant to

Michigan state law, "the denial of governmental immunity is . . . a 'final order' providing defendants

with an appeal of right to the Michigan Court of Appeals." *Id.* at 408. Therefore, we also have

jurisdiction over the district court's denial of state statutory governmental immunity.

---

the information he submitted to the prosecutor is truthful." *Kinkus v. Village of Yorkville*, 289 F. App'x 86, 91 (6th Cir. 2008) (unpublished opinion) (*citing Skousen v. Brighton High Sch.*, 305 F.3d 520, 528-29 (6th Cir. 2002) (holding that a police officer who made a truthful report to the prosecutor's office was not liable for malicious prosecution because he did not make the decision to initiate criminal proceedings)); *see also Wysong v. City of Heath*, 377 F. App'x 466, 470 (6th Cir. 2010) (unpublished opinion) (holding that officers were not liable for malicious prosecution because "there is no evidence in the record that the officers misled [the prosecutor] in any way") (*citing Kinkus* and *Skousen*). In the instant case, however, the alleged misrepresentations were made to the judge, not the prosecutor; the judge, not the prosecutor, determines whether there is probable cause for arrest. Here, the judge decided to sign the warrant based on Nasser's representations, not the prosecutor's evaluation of the evidence. Thus, even if Nasser was truthful in his report to the prosecutor, he was not freed from making a full disclosure to the judge. Nasser provides no support for his argument that the prosecutor's review of the evidence immunizes an officer from the consequences of his alleged intentional misrepresentations to the judge when seeking the judge's authorization of the warrant. *See also Vakilian*, 335 F.3d at 515–16 (rejecting absolute immunity for an investigator who testified before a state judge to the factual basis of a criminal complaint that had been authorized by a prosecutor who had independently reviewed the evidence).

Under Michigan law, Nasser, as a defendant-official accused of committing the intentional tort of false arrest, may be entitled to the affirmative defense of governmental immunity for the state claim of false arrest. To qualify for governmental immunity for an intentional tort, Nasser must show that:

(a) [t]he acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
(b) the acts were undertaken in good faith, or were not undertaken with malice, and
(c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008). It is undisputed that Nasser was acting within the scope of his employment and that his acts were discretionary.

There is no good faith, however, and therefore no immunity from suit, "when the governmental employee acts *maliciously* or with a *wanton or reckless disregard of the rights of another*." *Id.* at 225 (emphasis in original). The district court found a genuine issue of material fact as to whether Nasser intentionally misrepresented evidence to the state judge, which would defeat good faith. Thus, construing the facts in the light most favorable to Richardson, the district court did not err in concluding that Nasser "did not act in good faith when testifying before the [state] district judge and, therefore, is not entitled to summary judgment on the basis of governmental immunity." Dist. Ct. Op. at 30.

14

## IV. CONCLUSION

Proof of the facts and inferences as alleged by Richardson would establish the violation of a clearly established right to be free from arrest without probable cause. Therefore, we **AFFIRM** the district court's denial of summary judgment on the federal claim of false arrest on the grounds of qualified immunity. Under Michigan law, good faith is a necessary element of the governmental-immunity defense. An issue of material fact remains as to whether Nasser intentionally made misrepresentations to the state judge, which would defeat good faith. Accordingly, we **AFFIRM** the district court's denial of summary judgment on the state-law claim on the grounds of governmental immunity.