Gary SINICK, Plaintiff–Appellee,

v.

COUNTY OF SUMMIT, et al.,
Defendants–Appellants.

No. 02–3463.

United States Court of Appeals,
Sixth Circuit.

Sept. 24, 2003.

Edward L. Gilbert, Michael J. Wright, Slater, Zurz & Gilbert, Akron, OH, for Plaintiff–Appellee.

Anita L. Davis, Summit County Prosecutor's Office, Akron, OH, for Defendant–Appellant.

Before BOGGS and SILER, Circuit Judges; and STEEH, District Judge.*

---

STEEH, District Judge.

Defendants-appellants Tami Cook, James R. Dodds, Keith Gowens, and Stephen Sample (hereinafter referred to as "appellants"), officers of the Summit County, Ohio, Sheriff's Department, filed this interlocutory appeal for review of the district court's denial of their assertions of qualified immunity and statutory immunity to plaintiff's 42 U.S.C. § 1983 and state law claims. Three of the appellants, Dodds, Gowens and Sample, also assert that the district court erred in permitting plaintiff-appellee's amended complaint adding them to the case, because the claims were barred by the statute of limitations. For the reasons that follow, we reverse the district court's denial of qualified immunity as to all four appellants on the § 1983 claims. Because statutory immunity provided to employees of political subdivisions by the State of Ohio contemplates only immunity from liability, and not from suit, this court lacks jurisdiction over that aspect of appellants' appeal, which will be dismissed. Appeal of the district court's order allowing for amendment of the complaint to state claims against appellants Dodds, Gowens, and Sample will also be dismissed, as that is not a final decision as required by 28 U.S.C. § 1291.

## I.

### Background

On September 8, 1999, Summit County Sheriff Deputy Tami Cook requested a search warrant for residential premises occupied by plaintiff-appellee Gary Sinick (hereinafter referred to as "appellee") and other individuals. Appellant Cook based the warrant request on information sup-

* The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

plied by a confidential informant, Charles Capien. In her affidavit, Cook stated that Capien had provided "reliable information to the Summit County Sheriff's Office Narcotics Unit and the Akron Police Department, which has been corroborated through investigations and has led to convictions."

Following execution of the search warrant by the individual appellants, appellee and two other occupants were arrested for possession of LSD (Lysergic Acid Diethylamide). Appellee and his roommates were indicted on September 14, 1999 on one count each of possession of LSD, a Felony of the First Degree under the laws of the State of Ohio.

After the indictment, the Summit County Sheriff's Department Narcotics Division received a tip that Charles Capien had planted the LSD in appellee's residence. During the ensuing investigation, appellant Gowens obtained Capien's written confession that he had put a "book of acid" in the bathroom drawer at the appellee's residence, in an attempt to get "time knocked off [his] cousin's sentence" in return for assisting police. Capien was subsequently charged with possession of the LSD and with tampering with evidence and obstruction of justice, and was sentenced to prison.

Ultimately, after the filing of a successful motion to suppress in state court, in which appellee argued that appellant Cook had not stated in sufficient detail the informant's veracity (and therefore had not provided probable cause supporting the warrant's issuance), appellee's criminal case was dismissed. Appellee then filed a civil case against Summit County, appellant Cook and two John Doe defendants in the United States District Court for the Northern District of Ohio on August 31, 2001, alleging causes of action under 42 U.S.C. § 1983, the Ohio State Constitution, and a state law claim of intentional infliction of emotional distress.

Appellee made an oral motion on February 1, 2002 and filed a written motion on February 11, 2002 seeking to amend his complaint to identify the John Doe defendants. On February 12, 2002, the district court granted appellee's motion to amend and denied the appellants' motion to strike appellee's amended complaint. The appellants filed a collective motion for summary judgment on February 19, 2002. Appellants' motion was granted in part by the district court but denied in connection with their assertions of qualified immunity to appellee's 42 U.S.C. § 1983 claim and statutory immunity to the state law claim of intentional infliction of emotional distress. Appellants then timely filed this interlocutory appeal.

## II

### Standard of Review

This Court conducts a *de novo* review of the denial of qualified immunity by a district court. *Sheets v. Mullins,* 287 F.3d 581, 586 (6th Cir.2002) (citations omitted). *See also Klein v. Long,* 275 F.3d 544, 550 (6th Cir.2001), *cert. denied,* 537 U.S. 819, 123 S.Ct. 95, 154 L.Ed.2d 26 (2002).

### Jurisdiction

■ Appellee presents a threshold issue for consideration: that this Court does not have jurisdiction to consider the challenge of appellants Dodds, Gowens, and Sample to the lower court's refusal to grant them qualified immunity to appellee's 42 U.S.C. § 1983 claim, because it is not a final judgment of a district court. Appellee contends that an interlocutory appeal is not available for this claim of those three appellants, because it raises a genuine issue of fact inseparable from the merits of the case.

Jurisdiction over this appeal is provided by 28 U.S.C. § 1291, which grants this Court jurisdiction to hear claims of appeal from final judgments of district courts. Although denials of summary judgment entered by district courts are generally not "final judgments," *Phelps v. Coy*, 286 F.3d 295 (6th Cir.2002); *Johnson v. Jones*, 515 U.S. 304, 309, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), the collateral order doctrine establishes that certain interlocutory decisions are immediately appealable, as they amount to "final decisions" as required for appeal by 28 U.S.C. § 1291. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Appellants contend that this case allows for such review. Appellee relies on the cases of *Johnson* and *Berryman v. Rieger*, 150 F.3d 561 (6th Cir.1998), which quoted *Johnson* in holding that this Court's jurisdiction over interlocutory appeals of qualified immunity is limited "to cases presenting neat abstract issues of law." *Berryman*, 150 F.3d at 563.

In the *Johnson* case, plaintiff's complaint alleged that he was beaten by five officers. Three of the five denied that they had taken part in the beating and asserted a qualified immunity defense. The Seventh Circuit Court of Appeals declined to hear the three officers' appeals, finding that the genuine issue of fact as to whether the three officers were involved precluded appellate jurisdiction under 28 U.S.C. § 1291. *Johnson*, 515 U.S. at 308, 318, 115 S.Ct. 2151. The Seventh Circuit's decision was affirmed by the Supreme Court, holding that the defendants could not immediately appeal such a fact-related district court determination. *Id.* at 313, 115 S.Ct. 2151. *See also Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). Appellee contends that the case *sub judice* is much like *Johnson*, as appellants Gowens, Sample, and Dodds repeatedly argue that they are defendants "in name only," that no specific allegations have been asserted against them, and they were not involved in unconstitutional acts. Appellee's position is that this is the same "evidence insufficiency" contention made by the three officers asserting qualified immunity in the *Johnson* case.

In their reply brief, appellants point out they are not asserting a factual dispute (i.e. whether they had any involvement in an unconstitutional act), but a purely legal question in that appellants Gowens, Sample and Dodds were not even *alleged* to have performed any unconstitutional act. Furthermore, appellants urge the court to accept the facts as presented by appellee in determining whether the district court properly denied qualified immunity as to all four individual appellants. Where appellants are "prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the appellee's case," appellate jurisdiction lies over such an interlocutory appeal. *Sheets*, 287 F.3d at 585 (quoting *Berryman*, 150 F.3d at 563–64). *See also Klein*, 275 F.3d at 550 (citing *Dickerson*, 101 F.3d at 1157). In this matter, appellants Gowens, Sample, and Dodds are presenting a legal question for review. Furthermore, it is asserted on behalf of all four appellants that the court need consider only the facts presented by appellee in making its determination on the question of qualified immunity. Therefore, this Court has jurisdiction to review the denial of qualified immunity in this case.

*District Court's Refusal to Grant Qualified Immunity as to Appellee's 42 U.S.C. § 1983 Claim*

In their first claim of error, appellants assert that the district court erred by refusing to grant them qualified immunity to appellee's 42 U.S.C. § 1983 claim. The

doctrine of qualified immunity, under certain circumstances, operates to shield governmental officials performing official duties from civil liability. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The purpose of qualified immunity, where it is applicable, is to save an official from the burdens of discovery and costs of a trial. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The determination of whether an official is entitled to the shield of qualified immunity is "a threshold question to be resolved at the earliest possible point in the proceedings." *Vakilian v. Shaw,* 335 F.3d 509, 516 (6th Cir.2003) (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727).

In considering a claim of qualified immunity on appeal, this Court asks the following three questions: 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights"? *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (*en banc* ) (citing *Dickerson,* 101 F.3d at 1158).

### Qualified Immunity for Gowens, Sample and Dodds

■ Appellants Gowens, Sample, and Dodds contend that appellee presented in opposition to summary judgment neither evidence nor allegations that these three appellants had performed any unconstitutional acts, and argue that appellee's "[mere] joining [of] a defendant to a lawsuit is not sufficient for a trial court to deny qualified immunity to that defendant." Cook's co-workers cite to *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir. 1991), and *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), for the proposition that a court must first ask whether a violation of a constitutional right has been asserted by the plaintiff before determining whether qualified immunity exists. *Siegert,* 500 U.S. at 231, 111 S.Ct. 1789. *Siegert,* in its reasoning, cites the landmark case of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), summarized in *Mitchell:*

> *Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

*Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806. If no constitutional violation is alleged, appellants contend, a defendant's assertion of qualified immunity cannot be overcome. *Siegert,* 500 U.S. at 232, 111 S.Ct. 1789.

An examination of the record below lends support to this argument. Appellee's response to appellants' motion for summary judgment (J.A. 124–51) alleges only, citing to the deposition of informant Charles Capien, that Detective Dodds had told Capien "he wanted some busts and didn't care how it was done," that all Capien had to do "was see drugs in a house, inform the Defendants of these drugs, and the Defendants would run in and get the drugs," and that defendants "told Mr. Capien to do what he had to do."[1] These

---

1. Capien's actual deposition testimony was that Dodds said "[I] don't care how it's done, [I] want some busts and wherever [you] take us to, [you] better make sure there's drugs in the house ....just go in a house, come out, say [you] saw the drugs, [we] run in the

appear to be the only specific allegations of acts undertaken by Dodds, Gowens, and Sample. However, the district court, in denying their defense of qualified immunity, attributed Cook's actions (or lack thereof) to her co-workers, and stated that defendants' collective failure to further investigate the facts set forth in Capien's tip and failure to corroborate corroborate the information indicates reliance on a warrant not supported by probable cause. The district court therefore found that it was "objectively unreasonable for the Defendants to rely on the warrant when executing the search of Plaintiff Sinick's residence," (J.A. 90) and denied their motion for summary judgment.

Appellee asserts that it was "objectively unreasonable for appellants to rely on the search warrant as supported by probable cause, when they themselves pressured the confidential informant to produce the false information on which the search warrant was premised." (Appellee's Final Brief, p. 15). However, as appellants point out, appellee did not articulate at the summary judgment juncture this claim or any other claim asserting the violation of a constitutional right on the part of Cook's three co-workers. The trial court improperly disposed of the four individual defendants' claim of qualified immunity together, when there were not any allegations that the three co-workers shared Cook's role in securing the warrant or failed, somehow, to assess the warrant's legitimacy before its execution.

As the district court acknowledged, an officer may "rely on a judicially secured warrant for immunity from an action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey*

*v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir.1989) (citing *Malley v. Briggs,* 475 U.S. 335, 344, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). It is this principle that relieves Cook's co-workers in this case. The search warrant at issue set forth specific information collected from a confidential informant. The informant was said to have provided information in the past and was described as reliable. These are indicia of probable cause that an officer who did not secure the search warrant is entitled to rely upon. It is this court's determination that no constitutional violation was alleged as to these three appellants, and the district court's denial of appellants' Dodds, Gowens, and Sample's claim of qualified immunity as to appellee's 42 U.S.C. § 1983 claim will be reversed.

### Qualified Immunity for Cook

Appellant Cook simply contends that "[a]ppellee failed to create a genuine issue of material fact that Deputy Cook's actions were not objectively reasonable under the totality of the circumstances." (Appellants' Reply Brief, p. 8.) The district court found on summary judgment that Cook's affidavit supporting the search warrant "failed to set forth more than bare bones assertions of the confidential informant's reliability." (J.A. 89). That opinion further detailed Cook's deposition testimony, including that she had never before worked with Capien and had not conducted a background check into his past criminal history for an assessment of credibility, and that she had no personal knowledge of whether Capien had given reliable information to the Akron Police Department. (J.A. 89) The district court, therefore, found that "genuine issues of material fact exist regarding whether Defendant Cook either knowingly or reck-

---

house." From this testimony appellee urges an inference that Dodds was suggesting to

Capien that he plant the drugs. A reasonable fact finder could not make such an inference.

lessly provided inaccurate information in her affidavit seeking a search warrant." (J.A. 90, citing *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir.1989)).

Although the district court determined that there were genuine issues of material fact as to whether Deputy Cook's reliance on the search warrant was reasonable, as noted above, appellant urges the court to consider the appellee's version of the facts in determining whether denial of qualified immunity was appropriate. Therefore, the question before the court is whether, considering that given set of facts, Deputy Cook violated clearly established law.

*Mattox v. City of Forest Park,* 183 F.3d 515, 519 (6th Cir.1999). This is a legal question appropriate for appellate review.

Appellant Cook is alleged to have secured a search warrant, in part, through the making of misrepresentations to the issuing court. Specifically, appellee directs us to its argument in response to the motion for summary judgment considered by the district court, in which it listed the asserted "misrepresentations, omissions, and blatant falsities" of the affidavit supporting Deputy Cook's request for a search warrant.[2]

2. These were alleged, *verbatim,* as set forth below as found in the Joint Appendix, pp. 127–28. It should be noted, however, that many of the deposition pages referenced below have not been furnished to this court in the Joint Appendix.

• The affidavit states that Defendant Cook had been employed as a detective with the Summit County Sheriff's Department since June 1999 when Defendant Cook s(sic) hire date was actually July 19, 1999. (Cook Depo, attached hereto and incorporated as Exhibit 5, Pg. 226).

• The affidavit states that Defendant Cook was a 1992 graduate of the Ohio Peace Officer s(sic) Training Academy when Defendant Cook actually graduated from a private security program in 1992 (Cook Depo Pg. 226).

• The affidavit states that throughout Defendant Cook s(sic) law enforcement career she has received specialized training in narcotics investigations, including undercover drug narcotic investigations. (Cook Depo Pg. 227). However, Defendant Cook started her law enforcement career in 1992 and did not receive her first narcotics training until 1996. (Cook Depo Pg. 228). Further, Defendant Cook did not receive her first Public Agency Training until 1997. (Cook Depo Pgs. 229–230).

• The affidavit fails to state that Defendant Cook was only a part-time reserve officer from 1992 until July 1999. (Cook Depo Pgs. 231–232).

• The affidavit fails to state that this was Defendant Cook s (sic) first assignment with the Summit County Sheriff s(sic) Office Narcotics Unit. (Cook Depo Pg. 232).

• The affidavit fails to state that Defendant Cook was still on probation with the Summit County Sheriff's Office when she approached the judge for a warrant. (Cook Depo Pg. 232).

• The affidavit also states that the affiant believes and has good cause to believe there were illegal substances in Plaintiff's residence. However, this belief was based on information provided by Mr. Capien, a known criminal, who was trying to get special consideration in regards to criminal cases that he had pending. Mr. Capien further believed that his father and cousin would also get special consideration in relation to their pending criminal charges. (Cook Depo Pg. 237). In fact Cook had no personal knowledge of the reliability of Capien.

• Defendant Cook fails to do a criminal background check on Mr. Capien before submitting the affidavit. (Cook Depo Pgs. 279–280)

• Besides a record check of the accused individuals, the affidavit fails to provide any corroborating evidence regarding the facts or circumstances surrounding the warrant. (Aff. # 2 of McCauley, attached hereto and incorporated herein as Exhibit 6)

• The affidavit fails to state that there was no further investigation conducted to corroborate the hearsay statements of Mr. Capien. Deputy Cook relied solely on the hearsay statement of Mr. Capien. (Aff. # 2 of McCauley)

• The affidavit fails to sufficiently describe the reliability of Mr. Capien as a confidential informant. (Aff. # 2 of McCauley)

In applying the tripartite test set forth in *Williams, supra,* to Cook's claim of qualified immunity, we need first to determine whether appellee's facts demonstrate a violation of a constitutional right. At issue here is the right guaranteed under the Fourth Amendment, that arrest warrants may be issued only upon a showing of probable cause. *Vakilian,* 335 F.3d at 516 (citing *Greene v. Reeves,* 80 F.3d 1101, 1105 (6th Cir.1996)). As discussed by the district court, an officer such as Deputy Cook may rely on a judicially-secured warrant for immunity from an action for an illegal search and seizure; however, if that officer knowingly made false statements or omissions of fact to the judicial officer "such that but for these [false statements or omissions of fact] the judge would not have issued the warrant," such reliance is not reasonable. *Yancey,* 876 F.2d at 1243 (citations omitted). The officer, therefore, faces liability under 42 U.S.C. § 1983 if he

or she makes material false statements, knowingly or in reckless disregard for the truth, in order to establish probable cause for the warrant's issuance. *Vakilian,* 335 F.3d at 517 (citing *Ahlers v. Schebil,* 188 F.3d 365, 373 (6th Cir.1999)).

Although the district court considered *Yancey* in its analysis, it did not discuss whether Deputy Cook's alleged misrepresentations and omissions were *material.* The district court found that Cook's admissions that she was working with Capien as a confidential informant for the first time; that she had not conducted background checks into Capien's past criminal history; and that she did not have personal knowledge whether Capien had supplied any information (and whether such information was reliable) to the Akron Police Department comprised genuine issues of material fact "whether Cook had knowingly or recklessly provided inaccurate information in

• The affidavit states that Defendant Cook had personal knowledge regarding the address of Plaintiff's residence and the residence s(sic) description. (Cook Depo Pgs. 239–241). In fact, she had no such knowledge. (Cook Depo Pgs. 239–241).
• The affidavit states that Mr. Capien had given reliable information to the Akron Police Department in the past. (Cook Depo Pgs. 242–246). In fact, Mr. Capien only gave information to the Summit County Prosecutor s(sic) Office and Defendant Cook has no personal knowledge as to whether or not information was ever provided to the Akron Police Department. (Cook Depo Pgs. 242–46).
• The description of facts listed in the affidavit are based solely on the information produced by the Mr. Capien (sic), Defendant Cook had no personal knowledge of these facts. (Cook Depo Pgs. 246–247).
• The affidavit states that Plaintiff was inside the apartment when Mr. Capien saw the drugs. (Cook Depo Pgs. 247–250). In reality, Mr. Capien never told Defendant Cook, before signing the affidavit, that plaintiff was inside the apartment. (Cook Depo Pgs. 247–250).
• The affidavit discusses large quantities of cash supposedly seen in the Plaintiff s(sic)

residence; however, Defendant Cook admitted that she received no information that there were large quantities in Plaintiff's residence. (Cook Depo Pg. 265). As a matter of fact, the informant never mentioned that there was cash in the apartment. (Cook Depo Pg. 267).
• The affidavit discusses firearms and weapons inside the residence; however, the informant did not provide Defendant Cook with any information regarding weapons or firearms within Plaintiff's residence. (Cook Depo. Pgs 267–268)
• The affidavit discusses records, scales, and packaging material for drugs within the Plaintiff s(sic) residence, even though the Mr. Capien (sic) gave Defendant Cook no such information. (Cook Depo. Pgs. 269–270).
• The affidavit fails to describe Mr. Capien s(sic) refusal to participate in a controlled buy at the Plaintiff s(sic) residence. (Aff. # 2 of McCauley)
• The affidavit fails to state that Mr. Capien refused to wear a wire when asked to approach the Plaintiff s(sic) residence. (Aff. # 2 of McCauley)

her affidavit seeking a search warrant." The court did not state a finding that such information, or the lack thereof, was material. Cook's claim of qualified immunity will be overcome only if appellee establishes both

> 1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and 2) that the allegedly false or omitted information was material to the finding of probable cause.

*Vakilian,* 335 F.3d at 517 (citations omitted).

Regardless of whether Cook deliberately stated falsehoods or recklessly disregarded the truth, we find that her alleged statements and omissions were not material to the issuance of the warrant. Looking to the laundry list of alleged misrepresentations and omissions alleged by the appellee, *supra,* as well as those specifically addressed in the district court's opinion, we find that if a) the affidavit had been changed to state this was Cook's first assignment with the Summit County Sheriff's Office Narcotics Unit; that she was on probation; that Cook had not worked with Capien before; that Cook had not done a background check on Capien; that Cook had not personally been out to the appellee's address prior to executing the warrant; that Capien had not previously given reliable information to the Akron Police Department; that appellee was not inside the apartment when Capien saw the drugs; that Capien had not seen cash, firearms, weapons, records, scales, or drug packaging material inside the apartment;[3] and b) it had been pointed out to the judge that Capien refused to participate in a controlled buy at appellee's residence, and refused to wear a wire when asked to approach the residence, probable cause still existed for the issuance of the warrant.

The Cook affidavit (J.A. 19–22) gave many details of Cook's experience (save the two allegedly incorrect details concerning her hire date and security training location), gave a specific description of the premises to be searched, stated the three names of the residents of the premises, and named the controlled substance therein contained. The affidavit correctly stated that the confidential informant had provided reliable information, leading to convictions, to the Summit County Sheriff's Office Narcotics Unit (but also included the Akron Police Department, allegedly incorrectly), and stated that within the past three days Cook had received information from Capien that he had met with appellee's roommate at appellee's residence, who told Capien he was in possession of LSD. The affidavit indicated that appellee was also present at the residence, but did not indicate that Capien had spoken to appellee. Finally, the affidavit indicates that a background check run on appellee revealed a past drug trafficking conviction and drug abuse arrests. Comparing the affidavit, then, to plaintiff's facts in the preceding paragraph, appellant's false statements amounted to a) two details of Cook's credentials; b) Capien's furnishing of information to the Akron Police Department; and c) a statement that Capien told appellant that appellee was present at the time of Capien's visit to his residence within three days of the search.

As the district court acknowledged, the sufficiency of a search warrant affidavit is tested through an examination of the "totality of the circumstances." *Illinois v.*

---

**3.** The court notes that the affidavit did not assert that Capien had witnessed any of these items.

*Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). That case emphasized that courts reviewing determinations made by magistrates should accord them "great deference." *Id.* at 236, 103 S.Ct. 2317 (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). Furthermore, "probable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest." *Collins v. Nagle,* 892 F.2d 489, 495 (6th Cir.1989).

In the case of *United States v. Allen,* 211 F.3d 970 (6th Cir.2000), an affidavit supported by statements of a confidential informant, who indicated that he had seen a crime and evidence and who had previously given reliable information, was sufficient to support probable cause. *Id.* at 971. In this case, although the court notes there is no argument made concerning whether Capien's identity was made known to the issuing judge, the drugs to be searched for were described with specificity (e.g., the informant witnessed "800 to 900 unit doses of LSD"). The informant was said to have given reliable information to the very department seeking the warrant in this case, which had led to convictions. Finally, a check of the appellee's history in this case indicated a background in drug trafficking. These circumstances are similar to those in the case of *United States v. Pelham,* 801 F.2d 875 (1986), discussed in *Allen,* where an affidavit stating an informant's personal observation of marijuana stored and sold, in the immediate past, on certain premises, established probable cause sufficient for the issuance of a search warrant.

Although much of the affidavit in the instant case appears to be made up of boilerplate paragraphs, we cannot find that it is a "bare bones" affidavit as found by the district court. Furthermore, the only

alleged misrepresentation in the affidavit which is arguably material to the issuance of the search warrant is the statement about Capien's efforts for the Akron Police Department. As we have pointed out, in *Allen* the informant was alleged to have given reliable information in the past only to the affiant, not to any other authority. Likewise in this case, the judge was informed that the informant had given past reliable information to the Summit County Sheriff's Department, the very body seeking the warrant under discussion. This alleged misrepresentation cannot be said to be material.

For the foregoing reasons, the district court erred in making a determination that genuine issues of material fact existed concerning appellee's 42 U.S.C. § 1983 claim against Deputy Cook. She is therefore entitled to qualified immunity on her Fourth Amendment claim and this determination of the district court will be reversed.

*District Court's Refusal to Grant Appellants Statutory Immunity for Appellee's Claim of Intentional Infliction of Emotional Distress*

■ This claim on appeal addresses the district court's denial of summary judgment to the four appellants as to their assertion of statutory immunity, pursuant to Ohio Rev.Code § 2744.03(A)(6), to appellee's claim of intentional infliction of emotional distress. That provision specifically grants immunity *from liability* to an employee of a political subdivision absent certain circumstances. Notably, every preceding section in § 2744.03(A), addressing immunity of a political subdivision, similarly states that the statute is providing immunity *from liability,* rather than immunity from suit. The statute is clear in making that pronouncement.

Unlike appellee's qualified immunity argument, the issue of this Court's jurisdic-

tion was not raised by appellee in connection with this claim on appeal. However, it is this claim that this Court does not have authority to review on appeal. Where the state statute authorizing immunity is providing immunization for damages, rather than complete immunity from suit, interlocutory review is not permitted. *Walton v. City of Southfield*, 995 F.2d 1331, 1343 (6th Cir.1993). This is because

> the right to an interlocutory appeal from the denial of a claim of absolute or qualified immunity under state law can only exist where the state has extended an underlying substantive right to the defendant official to be free from the burdens of litigation arising from acts taken in the course of his duties.

*Id.* (quoting *Marrical v. Detroit News, Inc.*, 805 F.2d 169, 172 (6th Cir.1986)). More importantly, the Ohio Supreme Court in *Johnson v. Greene County Drug Task Force*, 91 Ohio St.3d 199, 743 N.E.2d 914 (2001), determined that statutory immunity claims denied by the lower court were not reviewable on interlocutory appeal, citing *Stevens v. Ackman*, 91 Ohio St.3d 182, 743 N.E.2d 901 (2001). Therefore, because Ohio state law contemplates immunity from liability only, the issue is not reviewable by this Court and this claim on appeal will be dismissed.

### District Court's Decision to Allow Amended Complaint

■ Finally, appellants contend that the lower court lacked subject matter jurisdiction over Cook's co-workers, as the appellee's amended complaint was filed after the period provided by the applicable statute of limitations. Ohio Rev.Code Ann. § 2305.10 provides for a statute of limitations of two years for civil rights actions arising in Ohio. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir.1989). Appellee's complaint in this matter was filed on August 31, 2001, nearly two years after his

cause of action accrued on September 8, 1999. However, appellee did not make a motion to amend his complaint, to replace the John Doe defendants until February 2002. For this reason, appellants assert that the trial court lacked jurisdiction over appellants Dodds, Gowens, and Sample.

In making this argument appellants are, appellee contends, seeking review of the district court's decision to allow an amended complaint. Appellee cites to *Lawson v. Abrams*, 863 F.2d 260, 262 (2nd Cir.1988), to support his assertion that an order granting leave to file an amended complaint is not a final decision under 28 U.S.C. § 1291, as such an order provides for the *continuation* of litigation. This is true, he asserts, even if the amendment "relates back" to a date prior to the statute of limitation's expiration. *Powers v. Southland Corp.*, 4 F.3d 223, 232–33 (3rd Cir.1993).

The *Cohen* decision established a narrow exception to the requirement set forth in 28 U.S.C. § 1291 that an appealable district court order be the one ending the litigation. *Cohen*, 337 U.S. at 546, 69 S.Ct. 1221. Unlike a claim of immunity, the trial court's decision to allow the amendment does not fall into this exception. "A right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee that trial will not occur." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) (citing *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)). As appellee convincingly argues, the lower court's order allowing for amendment of the complaint must independently qualify for immediate appeal under 28 U.S.C. § 1291, which it does not in this case. This claim made by appellants will be dismissed.

III.

*CONCLUSION*

For the reasons stated above, we RE-VERSE the district court's denial of qualified immunity as to each of the appellants on appellee's 42 U.S.C. § 1983 claim, and accordingly REMAND to the district court for entry of judgment as to that claim. The remaining claims on appeal are hereby DISMISSED for lack of jurisdiction and REMANDED to the district court for further proceedings.