NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0391n.06

No. 17-1418

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 06, 2018
DEBORAH S. HUNT, Clerk

ANTHONY MCCALLUM, et al.,

      Plaintiffs-Appellees,

v.

STEPHEN GEELHOOD, et al.,

      Defendants-Appellants.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

BEFORE:    BOGGS, CLAY, and DONALD, Circuit Judges.

    **CLAY, Circuit Judge.**  Detroit Police Officers Stephen Geelhood, Amy Matelic, Bryan Watson, and David Hansberry appeal the district court's denial of qualified immunity with regard to claims brought by Elaine and Anthony McCallum under 42 U.S.C. § 1983, alleging violations of Plaintiffs' Fourth Amendment rights. Officer Matelic also appeals the district court's grant of summary judgment to Anthony McCallum on his § 1983 claim alleging an unlawful search of his residence, in violation of the Fourth Amendment. For the reasons set forth below, we **AFFIRM**.

BACKGROUND

    On April 26, 2013, Officer Matelic obtained a warrant to search the McCallums' home, a blue pick-up truck, and an individual with "a possible street name of 'Dre'" who Matelic described as a black male standing five feet, ten inches tall and weighing 180 pounds. (R. 35-1 at PageID #591.) The next day, Matelic executed the warrant, accompanied by Officers Geelhood, Watson,

and Hansberry. The officers did not find a truck or an individual matching the descriptions in the search warrant, but they did find and conduct a search of the McCallums' home.

The McCallums allege that the officers executed the search in brutal fashion. Anthony McCallum asserts that Officers Geelhood and Hansberry assaulted him outside the home before entering. He explains that the officers ordered him to "get down" and then stomped on his back when he complied. (R. 35-3 at PageID #616.) Elaine McCallum alleges that after Officer Geelhood handcuffed her, Officer Matelic escorted her to the bathroom and then performed an invasive strip search of her genital area. The McCallums further describe a string of threats, insults, and assaults inflicted by Officers Geelhood and Hansberry, and they allege that the contraband recovered from their residence was planted there by Officer Watson. Watson has not denied the allegation against him, instead invoking his Fifth Amendment privilege. And in the years since the search, Watson and Hansberry allegedly have been convicted for "corruption involving phony seizure of narcotics, planting evidence, and other wrongful conduct." (R. 37.)

However, the officers' alleged misconduct during the search is not directly at issue in this appeal. This appeal concerns the McCallums' additional allegation that the search warrant was invalid and that the search of their home therefore violated the Fourth Amendment the moment it began. The McCallums allege that the affidavit Matelic submitted in support of the search warrant contained false and misleading statements, and that Matelic made these statements deliberately or with reckless disregard for the truth. The McCallums further allege that the affidavit does not include information sufficient to support a probable cause determination once the false and misleading statements are omitted.

In relevant part, Matelic's sworn affidavit stated the following:

> On 4/25/13, Affiant, working with P.O. Geelhood received confidential information from a credible and reliable confidential informant, regarding illegal

narcotics, which are being stored and sold from 16421 E. State Fair [Plaintiffs' residence], in the City of Detroit, and County of Wayne, Michigan. This confidential informant has provided information in the past regarding illegal narcotic trafficking on at least (3) prior occasions resulting in the confiscations of large amounts of cocaine, heroin, marijuana, firearms, and narcotic proceeds. Through the efforts of this confidential informant, P.O. Geelhood has cases pending in 36th District and 3rd Circuit Courts.

The confidential informant stated that he/she was inside of 16421 E. State Fair with an unwitting person during the past 48 hours and observed large amounts of cocaine being sold and stored from within.

On 4/25/13, Affiant and P.O. Geelhood conducted surveillance at the above location. During the course of 35 minutes, Affiant observed (3) suspected buyers . . . on separate occasions, walk up and drive up to the location, knock, engage in a brief conversation with the above SELLER, and then enter 16421 E. State Fair. The suspected buyers would remain inside of the location for approximately 2-3 minutes and then leave the location. Affiant did not stop suspected buyers due to the fact it may compromise the investigation. . . . .

Wherefore, Affiant has probable cause to believe that the listed seller and items will be found at 16421 E. State Fair, Affiant seeks to remove the same.

(R. 35-1 at PageID #590.)

Matelic now admits that she never actually received information from the informant described in her affidavit and never even knew the informant's identity. Matelic states that Geelhood provided her with all of the information related to the confidential informant. When drafting the affidavit, Matelic explained: "I guess I was -- I wanted to write it [the affidavit] so that it looked like it came from him [Geelhood]; that he's [Geelhood] telling me he's [the CI] credible and reliable. He has used him." (R. 25-2 at PageID # 366.)

Anthony McCallum was charged with possession of cocaine, possession of marijuana, felon in possession of a firearm, and felony firearm. In connection with these charges, McCallum

challenged the validity of the search warrant. The state court held a two-day *Franks* hearing.[1] On

the first day, the court adjourned after hearing testimony from Officer Matelic. The court stated:

> I mean, and I hate to be melodramatic, but, you know, frankly this is a false affidavit. Now, maybe because of sloppiness. But the fact of the matter is the affidavit very clearly signals that this affiant, witness, is the person that had direct communication with the SOI. . . . Very clearly the affiant gave the impression in the affidavit that she had firsthand knowledge of this contact with the SOI. That's the way it was presented to the magistrate. That's my problem.

*McCallum v. Geelhood* (*McCallum I*), No. 15-12676, 2017 WL 1196359, at *2 (E.D. Mich. Mar.

31, 2017) (quoting state court proceeding). When the hearing continued two days later, the state

court made the following findings:

> [B]ased on Amy Matelic's testimony the last time we were on the record she actually did not have any direct conversation with the informant. She doesn't have any experience with the informant. She implies in her affidavit that both she and [Defendant Geelhood] received confidential information. Well, she doesn't imply that. She says it. And that turns out not to be the case. Only [Defendant Geelhood] received it, and only [he] had the experience. And [Defendant Geelhood] is not a signatory to the affidavit. So the affidavit I mean really just cannot be ascribed as anything other than false in that respect. The, the affiant actually did not have the experience with the informant or conversations or, or any contact. Didn't have and actually said on the stand she didn't know who he was or she was.

*Id.* The court then granted Anthony McCallum's challenge to the validity of the warrant:

> I am going to strike the first two paragraphs of the affidavit, and that leaves only what was honestly averred in the affidavit. And that is that [Defendants Matelic and Geelhood] conducted surveillance on the above location. That but in and of itself clearly does not provide probable cause for the warrant.

*Id.*

---

[1] During a *Franks* hearing, the court considers a defendant's challenge to the validity of a warrant based on the contents of the underlying warrant affidavit. *See Franks v. Delaware*, 438 U.S. 154 (1978). "A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Young*, 847 F.3d 328, 348–49 (6th Cir. 2017) (quoting *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015)).

The McCallums subsequently filed suit in state court, bringing civil-rights claims against Officer Geelhood, "Officer Blue," and the City of Detroit. (R. 1-1 at PageID #6.) The McCallums then filed an amended complaint dated May 4, 2015, articulating the claims against the officers under 42 U.S.C. § 1983 that are the subject of the instant case. The officers removed the case to federal court on July 29, 2015. The case proceeded to discovery, after which the McCallums narrowed their § 1983 claims to the following: (1) unlawful-search-and-seizure claims against Officers Matelic and Geelhood, on behalf of both Anthony and Elaine McCallum; (2) excessive-force claims against Officers Geelhood and Hansberry, again on behalf of both Anthony and Elaine McCallum; (3) a false-arrest claim against Officer Watson, on behalf of Anthony McCallum; (4) a malicious prosecution claim against Officer Watson, on behalf of Anthony McCallum; and (5) a municipal-liability claim against the City of Detroit. *See McCallum v. Geelhood* (*McCallum II*), No. 15-12676, 2017 WL 1250756, at *1 (E.D. Mich. Mar. 31, 2017). In their claims against Matelic and Geelhood for unlawful search and seizure, the McCallums alleged at least two unlawful searches: the search of their home and the alleged strip search of Elaine McCallum. *See id.*

On May 5, 2016, Anthony McCallum moved for summary judgment on his claim that Officer Matelic performed an unlawful search of his home. The officers then moved for summary judgment as to some, but not all, of the remaining claims in the case.[2] With regard to the claims alleging an unlawful search of the McCallums' home, Matelic and Geelhood requested summary judgment on the basis of qualified immunity. The officers argued that no constitutional violation

---

[2] The officers submitted a collective summary-judgment motion, and Officer Matelic also requested summary judgment in her favor when responding to Anthony McCallum's summary judgment motion. The officers' motions were duplicative in some respects but did not address all the claims in the case.

had occurred because the search was executed pursuant to a valid warrant. Meanwhile, Officer Watson requested summary judgment as to Anthony McCallum's unlawful-arrest claim on the basis that Anthony McCallum had failed to show a lack of probable cause supporting the arrest.

The district court granted Anthony McCallum's motion for summary judgment and denied the officers' motions for summary judgment in separate orders.[3] The court held that Matelic's warrant application was invalid, that the search of the McCallums' residence was performed without probable cause, and that the search therefore violated Anthony McCallum's clearly established rights under the Fourth Amendment. *McCallum I*, 2017 WL 1196359, at *4. In denying the officers' motions, the district court held that the officers were not entitled to qualified immunity and that the following disputed issues would proceed to trial:

1. Whether Matelic performed a strip search of Elaine McCallum;

2. Whether Geelhood, in his review of Matelic's submission of the warrant affidavit, acted with the requisite knowledge and intent to share liability for the execution of the invalid search warrant;

3. Whether Geelhood and Hansberry used excessive force; and

4. Whether Watson planted the evidence that led to Anthony McCallum's arrest and subsequent legal proceedings.

*See McCallum II*, 2017 WL 1250756, at *5–9. The officers then filed this interlocutory appeal.

---

[3] The district court denied the officers' collective motion for summary judgment only "in part" because it granted additional time for discovery with regard to the McCallums' claims against the City of Detroit. However, none of the parties to this appeal have raised issues concerning the claims involving the City; for purposes of this appeal, the officers' collective motion for summary judgment was therefore denied in its entirety.

6

# DISCUSSION

## I.      Standard of Review

This Court "review[s] a grant or denial of summary judgment *de novo*, using the same . . . standard as the district court." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, this Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Nat'l Enters. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). In order to prevail, the non-movant must show evidence sufficient to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 341–42 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.     Analysis

The only issue properly raised in this appeal is whether Officers Matelic and Geelhood are entitled to qualified immunity regarding the search of the McCallums' home.[4]  Under 28 U.S.C.

---

[4] The officers attempt to expand the scope of their appeal, asserting that the district court should have granted summary judgment for "Defendants Matelic, Geelhood and the others." (Def. Br. 3.)  But the district court could not have granted summary judgment for all of the officers because their motions for summary judgment did not address at least three claims:  (1) Elaine McCallum's claim against Officer Matelic alleging an unlawful strip search; (2) Anthony McCallum's claim against Officer Watson alleging malicious prosecution; and (3) the

§ 1291, this Court has jurisdiction to hear an appeal only from a "final decision" of the district court. The district court has not issued a final judgment in this case, and an appeal from the denial of summary judgment is interlocutory and not ordinarily appealable. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004) (per curiam). However, denials of qualified immunity present an exception because they are part of a "'small class' of district court decisions that . . . 'finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). We therefore have jurisdiction to review the district court's denial of qualified immunity at the summary judgment stage, but "only 'to the extent that it turns on an issue of law.'" *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)); *see Johnson v. Jones*, 515 U.S. 304, 311–12 (1995).

The officers challenge the district court's denial of qualified immunity by raising both factual and legal arguments. To the extent the officers raise arguments that do not concede the most favorable view of the facts to the McCallums, such as when they argue that "Geelhood Did Not Review or Approve Matelic's Affidavit," (Reply at 14), this Court has no jurisdiction and

McCallums' claim that Officers Geelhood and Hansberry used excessive force. *McCallum II*, 2017 WL 1250756, at *5–7. To the extent that the officers attempt to appeal issues related to these claims, their arguments have been waived. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009) (explaining that a litigant must preserve arguments by raising them in the district court).

8

cannot address the officers' arguments.[5]  *See Johnson*, 515 U.S. at 311–312; *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011).

The officers raise a legal question as to whether the district court properly applied the *Franks* exclusionary rule to set aside the first two paragraphs of Officer Matelic's search warrant affidavit, thereby rendering the search warrant invalid and the search of the McCallums' residence unlawful.  We therefore analyze whether the district court properly denied qualified immunity to Officers Matelic and Geelhood based on the *Franks* exclusionary rule.

A.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007)).  The analysis involves a two-step inquiry: (1) whether, viewing the record in the light most favorable to the plaintiff, a constitutional right has been violated; and (2) whether the right at issue was "clearly established" at the time.[6]  *Id.*

The constitutional right at issue in this case is the Fourth Amendment right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  "'At the very core'" of this right "'stands the right of a man

---

[5] The officers did not raise their factual arguments in the summary judgment proceedings below.  Even if this Court had jurisdiction to hear such arguments in an interlocutory appeal, then, these arguments have not been preserved for our review.

[6] Defendants do little to suggest that the rights at issue in this case are not clearly established.  Nor could they.  The right to be free from warrantless searches of one's home is clearly established, *see, e.g.*, *El Bey v. Roop*, 530 F.3d 407, 421 (6th Cir. 2008), as is the right to be free from searches predicated on an officer's intentional or reckless submission of false statements in a warrant affidavit, *Franks*, 438 U.S. at 171.

to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).  The Constitution makes clear that a search warrant for a residence may not issue except "upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  A probable-cause determination requires the issuing magistrate to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

As a safeguard to the probable cause requirement, this Court applies the exclusionary rule first articulated in *Franks v. Delaware*, 438 U.S. 154 (1978).  The foundation of this rule is that "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant."  *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). "Such reliance is unreasonable, and detention of an individual pursuant to such deceptive practices violates the Fourth Amendment."  *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006). Thus, a plaintiff may challenge an officer's qualified-immunity defense in a civil-rights case by showing that (1) the officer's warrant affidavit contained a false statement or omission that was made either deliberately or with reckless disregard for the truth; and (2) that the false statement or omission was material to the finding of probable cause.  *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).  Once a plaintiff makes this showing, the Fourth Amendment requires the court to "set aside the [false] statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish

probable cause." *Sykes*, 625 F.3d at 305. If not, any search performed pursuant to the warrant was unlawful, in clear violation of the Fourth Amendment. *See Franks*, 438 U.S. at 156.

B.

In this case, the district court properly applied the *Franks* exclusionary rule to set aside the first two paragraphs of Officer Matelic's warrant affidavit. The paragraphs that were set aside described statements that a confidential informant purportedly made to Matelic, as well as Matelic's basis for believing that the informant was reliable:

> On 4/25/13, Affiant, working with P.O. Geelhood received confidential information from a credible and reliable confidential informant, regarding illegal narcotics, which are being stored and sold from 16421 E. State Fair [Plaintiffs' residence], in the City of Detroit, and County of Wayne, Michigan. This confidential informant has provided information in the past regarding illegal narcotic trafficking on at least (3) prior occasions resulting in the confiscations of large amounts of cocaine, heroin, marijuana, firearms, and narcotic proceeds. Through the efforts of this confidential informant, P.O. Geelhood has cases pending in 36th District and 3rd Circuit Courts.
>
> The confidential informant stated that he/she was inside of 16421 E. State Fair with an unwitting person during the past 48 hours and observed large amounts of cocaine being sold and stored from within.

(R. 35-1 at PageID #590.) The court explained that it excluded these paragraphs because:

> Matelic's statements were false and those statements were essential to the finding of probable cause of the warrant. The affidavit insinuated that Matelic received the information directly from the informant, rather than her partner Officer Geelhood. This was inaccurate. The fact that Matelic did not receive the information directly from the informant and does not even know anything about the informant is pertinent information that the [state] judge felt the court should have known. Although Officer Matelic may not have intended to do so, even viewing the evidence in the light most favorable to Matelic, she at least demonstrated a reckless disregard for the truth when she wrote the affidavit.

*McCallum I*, 2017 WL 1196359, at *4.

In other words, the *Franks* exclusionary rule applied because Matelic's affidavit contained statements or omissions that were (1) made either deliberately or with reckless disregard for the

truth; and (2) material to the finding of probable cause. *See id.* Setting these statements aside, the district court found the remaining portions of the affidavit insufficient to support a finding of probable cause.[7] *See id.* The court's analysis is consistent with the legal standard under *Franks* and is fully supported by the record.[8]

In fact, the district court's analysis is nearly identical to the Supreme Court's analysis in *Franks*. *Franks* involved analogous facts in which a defendant in a criminal case alleged that a search-warrant affidavit misrepresented that the affiants-officers had personal knowledge regarding the statements of two informants when in reality the officers had not been present for the informants' interviews. *Franks*, 438 U.S. at 157–58. The Court held that the information the officers claimed to have learned from the informants must be excluded if, as the defendant asserted, the officers did not have personal knowledge of the informants' statements and if the officers' misrepresentations to that effect in their warrant affidavit were made deliberately or with reckless disregard for the truth. *See id.* at 156. The Court reached this holding despite the fact that the two informants allegedly had provided statements to a different police officer that were similar to (but "somewhat different" from) the statements attributed to them in the officers' affidavit. *Id.* at 158.

---

[7] We do not analyze the court's probable-cause determination after the application of the exclusionary rule because the officers have not challenged the determination in their appeal.

[8] The original *Franks* analysis conducted by the state court is not a paragon of clarity. Initially, the court suggested that the false nature of Matelic's affidavit could have resulted from mere "sloppiness." *See McCallum I*, 2017 WL 1196359, at *2 (quoting state court proceeding). Sloppiness, unless reckless, is not sufficient to trigger the *Franks* exclusionary rule. The court did not provide any further insight into its determination at the follow-up *Franks* hearing. (*See* R. 25-4.) Nevertheless, the court operated under the correct standard, and it also elicited Matelic's admission that she "wanted to write it [the affidavit] so that it looked like it came from him [Geelhood]." (R. 25-2 at PageID # 366). Thus, even if the state court noted a *possibility* that Matelic's intent fell below the level required to trigger the exclusionary rule, namely recklessness or deliberateness, the record supports the court's decision to apply the rule.

The Court reasoned that "the integrity of the affidavit was directly placed in issue by petitioner in his allegation that the affiants did not, as claimed, speak directly to [the informants]." *Id.* at 164.

The officers in this case make no attempt to distinguish the parallel facts of *Franks*. The officers merely assert that there is "no evidence to suggest that Matelic's actions were intentional to mislead the court or performed with a reckless disregard for the truth." (Def. Br. 40.) But the district court correctly highlighted Defendant Matelic's statement that she "wanted to write it [the affidavit] so that it looked like it came from him [Geelhood]," before concluding that, "viewing the evidence in the light most favorable to Matelic, she at least demonstrated a reckless disregard for the truth when she wrote the affidavit." *McCallum I*, 2017 WL 1196359, at \*2, \*4. We agree.

The officers also argue that the *Franks* exclusionary rule is not the proper inquiry and that the district court should have instead analyzed this case under the collective-knowledge doctrine. We disagree, finding that the collective-knowledge doctrine is irrelevant to the factual circumstances of this case. This Court has previously explained the context in which the collective-knowledge doctrine applies:

> Variously called the "collective knowledge" or "fellow officer" rule, this doctrine recognizes the practical reality that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *Hensley*, 469 U.S. at 231, 105 S. Ct. 675 (quotation omitted). Because officers "must often act swiftly [and] can not be expected to cross-examine their fellow officers about the foundation of transmitted information," we impute collective knowledge among multiple law enforcement agencies, even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop. *Id.* at 230–31, 105 S. Ct. 675; *see also Whiteley v. Warden*, 401 U.S. 560, 568, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971). Whether conveyed by police bulletin or dispatch, direct communication or indirect communication, the collective knowledge doctrine may apply whenever a responding officer executes a stop at the request of an officer who possesses the facts necessary to establish reasonable suspicion. *Dorsey*, 517 F.3d at 396; *Smoak*, 460 F.3d at 779. By imputing the investigating officer's suspicions onto the responding officer, without requiring the responding officer to independently weigh the reasonable suspicion analysis, the collective knowledge doctrine "preserves the propriety of the stop" and avoids crippling restrictions on

13

our law enforcement. *United States v. Ibarra–Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999).

*United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012). Because the instant circumstances do not involve an officer who "execute[d] a stop at the request of another officer who possesses the facts necessary to establish reasonable suspicion," the officers' collective-knowledge argument is unavailing. *See id.* This case involves an officer who filed a warrant affidavit containing false statements or omissions, which is precisely the factual scenario that the Supreme Court analyzed in *Franks*. The district court therefore committed no error when it applied the *Franks* inquiry.

The officers next attempt to attack the inevitable exclusion of Matelic's false statements by citing numerous cases, most of which do not even discuss allegations of false or misleading warrant affidavits. The few that do so are clearly distinguishable from the instant circumstances. In *Bennett v. City of Grand Prairie*, for instance, an officer candidly represented, as officers are permitted to do, the fact that certain information contained in his warrant affidavit had been supplied by his colleagues. 883 F.2d 400, 406 (5th Cir. 1989). The court found that the officer "identified clearly which information he received from [other officers]" and that "[n]othing in the record demonstrates that [the officer] made 'a false statement knowingly and intentionally, or with reckless disregard for the truth.'" *Id.* In sharp contrast to the McCallums, then, the *Bennett* plaintiff did not credibly allege that the warrant affidavit contained a misrepresentation or that an officer had acted with the requisite intent. The *Franks* exclusionary rule was therefore inapplicable.

The officers also cite a case in which allegedly false statements and omissions in a warrant affidavit were immaterial to the magistrate's probable-cause determination. In *Sinick v. Cty. of Summit*, this Court evaluated a criminal defendant's "laundry list of alleged misrepresentations and omissions." 76 F. App'x 675, 683 (6th Cir. 2003). We concluded that most of the information

was not even arguably material to the magistrate's probable-cause determination. *See id.* Applying the *Franks* analysis, we evaluated the single misstatement that was arguably material and determined that it was not, in fact, material; thus, probable cause still existed to support the search warrant. *See id.* at 684. The officers make no arguments that could lead to a similar result in this case, instead suggesting that *Sinick* supports their theory under the collective-knowledge doctrine. We are not persuaded.

### III.    Conclusion

The district court properly applied the *Franks* exclusionary rule to set aside the first two paragraphs of Officer Matelic's warrant affidavit. We therefore **AFFIRM** the district court's judgment.